UNITED STATES DISTRICT COURT
DISRICT OF MINNESOTA

Jane Doe (a pseudonym),

        Plaintiff,

vs.

North Homes, Inc., individually and
d/b/a North Homes Children and Family Services and
I.T.A.S.K.I.N. Juvenile Center, Devin Michael Wood,
in his individual capacity, Connie Ross in her individual
and official capacities, John Does 1 – 5, in their
individual capacities, and John Does 6-10, in their
individual and official capacities.

        Defendants.

**Complaint and Jury Demand**

## Introduction

1. Incarcerated minors are among the most vulnerable populations in the United States. Placement in youth detention centers often increases the likelihood of a poor outcome, as the abuses these children experience in youth correctional facilities compounds their serious, preexisting issues. In 2012, a Bureau of Justice Statistics survey found that 1 in 10 incarcerated youth reported being sexually abused in such facilities. This case involves a youth detention and residential treatment center where sexual abuse of its minor residents was blatant, rampant, and condoned.

2. North Homes, Inc. owns and operates correctional and rehabilitative service facilities for juveniles at various locations in Northern Minnesota. It claims that its facilities provide comprehensive mental health services, including services to those who

have been sexually exploited.  Children are supposed to heal at these facilities.  They are supposed to be safe.  Instead, North Homes, Inc. facilities have become places where its staff members sexually abuse and prey on children, such as Jane Doe ("Jane") and others before and after her.

3. This is an action for money damages for the violations of Jane's well-settled rights under the Eighth and/or Fourteenth Amendments to the United States Constitution.  Jane also alleges supplemental state law claims.  As a result of Defendants' failures, including conscience shocking behavior and deliberate indifference to Jane's welfare and safety, Jane was sexual abused and suffered other severe and permanent injuries.

## Jurisdiction and Venue

4. Jane brings this action pursuant to the Eighth and/or Fourteenth Amendment and 42 U.S.C. § 1983.  This Court therefore has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has supplemental jurisdiction over Jane's state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper under 28 U.S.C. §§ 1391(b)(1) and (2).

6. The notice requirements of Minn. Stat. § 466.05 have been satisfied, to the extent necessary, as each Defendant hereto had sufficient facts to reasonably put them on notice.

## The Parties

7. Jane resides in the State of Minnesota, and was a 15-year-old Minnesota resident at all times hereto. The pseudonym "Jane Doe" is used to protect her identity here as a victim of childhood sexual abuse.

8. North Homes, Inc. ("North Homes") is a Minnesota nonprofit corporation, incorporated under the laws of the State of Minnesota. Its registered office address is located at 303 First Street SE, Grand Rapids, MN 55744.

9. North Homes operates under the registered, assumed name of North Homes Children and Family Services ("NH Services").

10. North Homes either directly, or through NH Services, owns and operates a facility under the unregistered, assumed name, I.T.A.S.K.I.N. Juvenile Center ("ITASKIN").

11. ITASKIN is and was located at 1880 River Road, Grand Rapids, MN 55744.

12. In operating ITASKIN, North Homes worked in concert with Itasca and other Minnesota counties to provide care for minor children who were detained, incarcerated, committed, or the like, for criminal, mental health, or other protective purposes.

13. ITASKIN has and had at all times material hereto units that were licensed by both the Minnesota Department of Human Services ("DHS") and the Minnesota Department of Corrections ("DOC"), through an inter-agency agreement between those entities.

14. ITASKIN operated through joint oversight by DHS and DOC under the terms of the inter-agency agreement between DOC and DHS, and ITASKIN maintained both DHS-and-DOC-licensed residential units within its facility.

15. In both the DOC-and-DHS licensed units at ITASKIN, the youth residents were under 24/7 supervision and were not free to leave on their own volition; their liberty was entirely restricted.

16. North Homes maintained discretion under color of state law, for example through statutory and regulatory authority and/or court orders, to move its minor residents between the DOC-and-DHS licensed units at ITASKIN.

17. ITASKINS's DOC and DHS units shared resources and managing employees, including but not limited to Connie Ross ("Ross").

18. Devin Michael Wood ("Wood") was a corrections officer in the ITASKIN secure unit at all times material hereto, employed by North Homes and acting in his individual capacity. Wood is presently 28 years old, and is incarcerated at MCF Moose Lake. Wood was 23 years old during the events at issue in this case.

19. Ross is and was at all times material hereto a director and administrator for North Homes, with final policymaking authority in the correctional setting, acting in her individual and official capacities. Upon information and belief, Ross resides in the State of Minnesota.

20. John Does 1 – 5 are presently unknown North Homes correctional employees, in their individual capacities, who owed Jane a duty of protection while Jane was an ITASKIN resident.

21. John Does 6 – 10 are presently known North Homes correctional supervisors, in their official and individual capacities, who owed Jane a duty of protection while Jane was a resident at ITASKIN.

22. Wood, Ross, and Jane Does 1 – 8 were all mandatory reporters under Minnesota law.

### Known Sexual Abuse at North Homes Facilities

23. In 1995, North Homes employee David Kist pleaded guilty to engaging in criminal sexual conduct towards a 15-year-old, female, ITASKIN resident.

24. In 2018, North Homes employee Marie Marna Booth pleaded guilty to engaging in criminal sexual conduct towards a 15-year-old, female, ITASKIN resident.

25. Upon information and belief, there have been other sexual abuses by North Homes staff on minor residents that have not yet come to public attention.

26. Inappropriate sexual contact and abuse of power are well-known hazards in group home situations, and juvenile detention and residential treatment centers, such as North Homes, are no exception. *See, e.g., Fahrendorff v. North Homes, Inc.*, 597 N.W.2d 905 (Minn. 1999).

### Jane's Placement and Serious Medical Needs

27. In early 2014, Jane was a foster child with serious mental health and behavioral needs, including bipolar disorder and substance use.

28. Kanabec County, in concert with Jane's foster mother, enrolled Jane at ITASKIN in early 2014 to address her serious mental health and behavioral needs.

29. Upon information and belief, Kanabec County had legal custody over Jane at all times material hereto.

30. Jane was initially placed in a DHS-licensed unit at ITASKIN.

31. On April 9, 2014, ITASKIN staff involuntarily detained Jane in the DOC-licensed unit for behavioral issues.

32. Wood was aware of and trained on Jane's serious medical needs before Jane was detained in the DOC unit.

33. Shortly after Jane's arrival in the DOC unit, Wood groomed and made sexual advances towards Jane.

34. John Does 1 – 10 were aware of and trained on Jane's serious medical needs.

35. John Does 1 – 10 were aware that Wood's grooming and/or sexual behavior towards Jane was improper, contrary to Jane's treatment needs, and not in compliance with North Homes policies and practices, yet John Does 1 – 10 failed to take any action to stop Wood's improper behavior.

36. Due to the close monitoring Jane received in the DOC licensed unit, it is inconceivable that Wood could have engaged in a continuous and inappropriate sexual relationship without John Does 1 – 10 becoming aware of Wood's inappropriate conduct towards Jane.  At the very least, John Does 1 – 10 should have been aware of this inappropriate and unlawful behavior.

37. Wood then engaged in sex acts, including intercourse, with Jane on multiple occasions between April 10, 2014 and April 12, 2014, all while Jane was detained in the DOC unit.

38. Jane was a virgin when Wood sexually penetrated her.

39. Wood's unlawful conduct towards Jane was detrimental towards Jane's serious medical needs and prescribed treatment for those serious medical needs.

40. Wood was arrested and charged with multiple counts of criminal sexual conduct on April 13, 2014.

41. After Wood's arrest, North Homes staff allowed information regarding what happened between Wood and Jane to circulate amongst residents and staff.

42. North Homes employees, including but not limited to John Does 1 – 10, proceeded to blame Jane for Wood's arrest and repeatedly harassed her for her actions with Wood, calling Jane names like "home wrecker."

43. John Does 6 – 10 and Ross became aware of the harassment being inflicted upon Jane by the North Homes employees, but allowed the harassment to continue.

44. This harassment caused Jane to suffer additional emotional and psychological harm.

45. Following Wood's arrest, Jane reported to Ross that she heard reports of another staff member at North Homes engaging in a sexual relationship with a minor resident.

46. To punish and silence her, Ross then directed that Jane be detained in the DOC unit, which Jane was.

47.     Ross then directed that Jane be removed from the ITASKIN facility all together, which Jane was.

48.     On September 16, 2014, Wood pleaded guilty to three counts of felony sexual conduct towards Jane in accordance with Minnesota Statute 609.344.1(m).

## Count I
### 42 U.S.C. § 1983 Individual Violations
### Eighth and/or Fourteenth Amendments
*Plaintiff v. Devin Michael Wood and John Does 1 – 10*

49.     Jane re-alleges each preceding paragraph as if fully set forth herein.

50.     The Defendants in this Count had a clearly established constitutional duty to provide for Jane's medical needs, personal safety, and general welfare.

51.     Although the Defendants named in this Count were employed by a nominally private entity, i.e., North Homes, they acted under color of state law because North Homes fulfilled the public function of juvenile incarceration, detainment, and commitment, and acted in concert with state actors in denying Jane her federal civil rights.

52.     By the actions described above, Wood, under color of state law and in his individual capacity, acted with deliberate indifference to Jane's serious medical needs, personal safety, and general welfare in violation of Jane's Eighth and/or Fourteenth Amendment rights.

53.     By the actions described above, Wood, under color of state law and in his individual capacity, engaged in conduct that was so outrageous that it shocks the

conscience so as to constitute a violation of Jane's Fourteenth Amendment substantive due process rights.

54. By the actions described above, John Does 1 - 5, under color of state law and in their individual capacities, acted with deliberate indifference to Jane's serious medical needs, personal safety, and general welfare in violation of Jane's Eighth and/or Fourteenth Amendment rights by failing to intervene to stop the unconstitutional actions taken by Wood towards Jane, despite having a realistic opportunity to do so.  John Does 1 - 5 acted either maliciously, with reckless disregard, or with deliberate indifference towards whether Jane's rights would be violated by Wood's actions and their failure to intervene.

55. By the actions described above, John Does 6 - 10, under color of state law and in their individual capacities as supervisors, had actual or constructive notice of their subordinates' unconstitutional conduct, but acted with deliberate indifference to or authorized these serious violations of Jane's constitutional rights.  These supervisors also failed to take any remedial action after becoming aware of these violations.

56. Jane has endured and will endure pain, suffering, humiliation, and embarrassment as a direct and proximate result of these Defendants' acts and omissions in addition to other categories of compensatory damages.

57. Jane has incurred and will incur medical expenses as a direct and proximate result of these Defendants' acts and omissions, in addition to other categories of special damages.

58. The Defendants named in this Count subjected Jane to these deprivations of her rights in such a manner so as to render these Defendants liable for punitive damages as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such are not subject to the pleadings requirements or the differing standards of proof set forth in Minn. Stat. § 549.20.

59. Jane is entitled to recover costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

60. Jane is entitled to compensatory and punitive damages in an amount exceeding TEN MILLION ($10,000,000.00) DOLLARS.

## Count II
### 42 U.S.C. § 1983 *Monell Violation*
*Plaintiff v. North Homes, Inc. and Connie Ross in her official capacity*

61. Jane realleges each preceding paragraph as if fully set forth herein.

62. Although North Homes is a nominally private entity, it acted under color of state law because North Homes fulfilled the public function of juvenile incarceration, detainment, and commitment, and acted in concert with state actors in denying Jane her federal civil rights. As a result, Ross also acted under color of state law.

63. North Homes and Ross, with deliberate indifference to the rights of Jane and other similarly situated children, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that created an atmosphere where children at North Homes were regularly subjected to sexual abuse.

64. North Homes' staff, including but not limited to Ross, regularly turned a blind eye towards inappropriate and sexual relationships between residents and staff, and

also encouraged a "code of silence" amongst staff members to protect North Homes' predatory offenders.

65. These customs, patterns, or practices, were the moving force behind Jane's injuries.

66. Jane has endured and will endure pain, suffering, humiliation, and embarrassment as a direct and proximate result of North Homes' acts and omissions in addition to other categories of compensatory damages.

67. Jane has incurred and will incur medical expenses as a direct and proximate result of North Homes' acts and omissions, in addition to other categories of special damages.

68. Jane is entitled to recover costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

69. Jane is entitled to compensatory damages in an amount exceeding FIVE MILLION ($5,000,000.00) DOLLARS.

**Count III**
**42 U.S.C. § 1983 Individual Violations**
**First Amendment**
*Plaintiff v. Connie Ross in her individual capacity*

70. Jane re-alleges each preceding paragraph as if fully set forth herein.

71. As set forth above, Ross acted under color of state law.

72. Jane engaged in a protected activity in reporting her concerns to Ross about alleged illegal sexual activity occurring between a different North Homes staff member and another youth resident.

73. Ross's actions of detaining Jane in the DOC-licensed unit caused an injury to Jane that would chill a person of ordinary firmness from continuing to engage in the activity.

74. A causal connection exists between the retaliatory animus and the injury.

75. No probable cause or other statutory authority existed to detain Jane in the DOC-licensed unit.

76. Jane has endured and will endure pain, suffering, humiliation, and embarrassment as a direct and proximate result of Ross's acts and omissions in addition to other categories of compensatory damages.

77. Ross subjected Jane to these deprivations of her rights in such a manner so as to render these Defendants liable for punitive damages as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such are not subject to the pleadings requirements or the differing standards of proof set forth in Minn. Stat. § 549.20.

78. Jane is entitled to recover costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

79. Jane is entitled to compensatory and punitive damages in an amount to be determined by jury.

### Count IV
**Negligence**
*Plaintiff v. Devin Michael Wood, John Does 1 – 10, and North Homes*

80. Jane re-alleges each preceding paragraph as if fully set forth herein.

81. All of the Defendants named in this Count owed Jane a duty of care.

82. Wood breached that standard of care by, among other things, engaging in a sexual relationship with Jane.

83. John Does 1 – 10 breached the standard of care by, among other things, allowing and not timely reporting the improper relationship between Jane and Wood.

84. Wood and John Does 1 – 10 breached numerous ministerial duties in the course of their negligence, and breached those duties within the course and scope of their duties as North Homes employees.

85. North Homes is liable for the acts and omissions of its individual employees under the doctrine of respondeat superior. *See Fahrendorff*, 597 N.W.2d 905.

86. North Homes was, among other reasons, directly negligent in failing to properly train and supervise its employees and in failing to implement proper policies, to ensure that minor residents in North Homes facilities would not be groomed and sexually abused by North Homes employees.

87. North Homes' numerous breaches and failures occurred at the operational level.

88. The allegations contained in this Complaint all occurred in the correctional setting, and none of the named Defendants are alleged to have been fulfilling the role of "health care providers" pursuant to Minn. Stat. § 145.682, subd. 1 for the purposes of this Complaint.

89. Jane has endured and will endure pain, suffering, humiliation, and embarrassment as a direct and proximate result of North Homes' acts and omissions in addition to other categories of compensatory damages.

90. Jane has incurred and will incur medical expenses as a direct and proximate result of North Homes' acts and omissions, in addition to other categories of special damages.

91. Jane is entitled to compensatory damages in an amount exceeding TEN MILLION ($10,000,000.00) DOLLARS.

### Prayer for Relief

WHEREAS, Plaintiff prays for judgment against Defendants as follows:

1. As to Count I, a money judgment against Wood and Jane Does 1 – 10 for compensatory and punitive damages in an amount exceeding TEN MILLION ($10,000,000.00) DOLLARS together with costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest;

2. As to Count II, a money judgment against North Homes for compensatory damages in an amount exceeding FIVE MILLION ($5,000,000.00) DOLLARS together with costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest;

3. As to Count III, a money judgment against Ross for compensatory and punitive damages in an amount to be determined by jury together with costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest;

4. As to Count IV, a money judgment against Wood, and John Does 1 - 10 for compensatory damages in an amount exceeding TEN MILLION ($10,000,000.00) DOLLARS together with costs and prejudgment interest;

5. Also as to Counts II, III, and IV, appropriate injunctive relief necessary to cease the unconstitutional policies, practices, and customs described herein.

6. For such other and further relief as the Court deems just and equitable.

**A TRIAL BY JURY IS HEREBY DEMANDED**

**Dated: December 18, 2018**

| | |
|---|---|
| **SIEBENCAREY, P.A.** | **NEWMARK STORMS DWORAK LLC** |
| /s/ Jeffrey M. Montpetit | /s/ Jeffrey S. Storms |
| Jeffrey M. Montpetit, #291249 | Jeffrey S. Storms, #0387240 |
| 901 Marquette Ave., Suite 500 | Paul C. Dworak, #391070 |
| Minneapolis, MN 55402 | 100 South 5th Street, Suite 2100 |
| Telephone: 612.333.4500 | Minneapolis, MN 55402 |
| Fax: 612.333.5970 | Telephone: 612.455.7050 |
| jeffrey.montpetit@knowyourrights.com | Fax: 612.455.7051 |
| | jeff@newmarkstorms.com |
| | paul@newmarkstorms.com |